UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DANIELLE SERINI,

                            Plaintiff,

                -against-                            **REPORT & RECOMMENDATION**
                                                                19-CV-892-NG-SJB

JENNIFER BECKER,

                            Defendant.
------------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        Plaintiff Danielle Serini ("Serini" or "Plaintiff") filed this civil rights action for false arrest and malicious prosecution, under 18 U.S.C. § 1983 and New York state law, against the City of New York and various City employees, including School Crossing Guard Jennifer Becker ("Becker" or "Defendant"), on February 14, 2019. (Compl. dated Feb. 14, 2019 ("Compl."), Dkt. No. 1). A settlement was reached between Serini and all Defendants—except Becker, who failed to appear—on February 14, 2023. (Min. Entry & Order dated Feb. 14, 2023). Following dismissal of the other Defendants and the Clerk's entry of default against Becker, (Stip. & Order of Partial Dismissal dated Feb. 28, 2023, Dkt. No. 100; Clerk's Entry of Default against Def. Becker dated May 8, 2019 ("Clerk's Entry of Default"), Dkt. No. 25), Serini moved for default judgment against Becker. (Second Mot. for Default J., dated Feb. 23, 2024, Dkt. No. 107). For the reasons stated below, the Court respectfully recommends that Serini's motion be granted.

FACTUAL AND PROCEDURAL HISTORY

        In April 2016, Serini was picking up her son from school when he tried to run across the street. (Compl. ¶ 18). Though she was able to stop him, she noticed that there were no school crossing guards at their designated posts. (*Id.*). The following

week, Serini told Becker, one of the school crossing guards, that Becker was not at her post the week before. (*Id.* ¶ 19). In response, Becker screamed and cursed at Serini. (*Id.* ¶ 20).

The day after this exchange, Police Officer Ebony Glover ("Glover") and Police Sergeant Gurnick ("Gurnick") visited Serini at her place of business, where she operated a chiropractic practice. (*Id.* ¶ 21). In front of Serini's patients, Glover "became verbally abusive and accused [Serini] of harassing [the] crossing guards," and directed Serini to call Gurnick with any complaints about the crossing guards. (Compl. ¶ 22). A few weeks later, Becker again screamed and cursed at Serini while she was taking her children to school. (*Id.* ¶ 23). That day, Serini called Gurnick to inform him she was being harassed; he said he would "take care of the problem." (*Id.* ¶ 24).

A month later, Glover and Gurnick returned to Serini's office and, in front of her patients and children, told Serini she had to go with them to the 120th Precinct. (*Id.* ¶ 25). At the precinct, she was placed in handcuffs, and told by Glover that she was being charged with stalking two crossing guards, Becker and Margaret Marsh. (*Id.* ¶ 26). Serini was held overnight, arraigned the following day on stalking and harassment charges, and released. (*Id.* ¶ 27). The Court entered orders of protection in favor of Becker and Marsh. (Compl. ¶ 27).

In February 2017, officers again came to Serini's office and placed her under arrest for violating the order of protection as to Becker. (*Id.* ¶ 28). She was again held overnight, arraigned the following day, and released. (*Id.* ¶¶ 29–30). A month later, in March 2017, Serini was again arrested based on complaints from Becker and Marsh that Serini had sent "vile and racist letters to Becker, Marsh, and the 120th [P]recinct." (*Id.* ¶ 31). She was held in custody for two nights and released on $3,500 bail. (*Id.* ¶ 32).

2

Following her arrests, multiple news outlets published articles with her photo reporting that she had written racist, threatening letters, and a YouTube video of her arrest. (*Id.* ¶ 33). The news coverage received many negative comments, including calls to boycott Serini's business. (Compl. ¶ 33). As a result, Serini received anonymous threats, friends ended relationships with her, she lost patients and was forced to close her business, and her kids were harassed at school. (*Id.* ¶¶ 34, 38).

The NYPD and Richmond County District Attorney eventually investigated Becker and Marsh's allegations and determined that Becker herself had composed and sent the racist letters. (*Id.* ¶ 35). Following the investigation, Becker was arrested, charged, and later pled guilty to felony tampering with evidence, and all charges against Serini were dismissed. (*Id.* ¶¶ 36–37).

Serini commenced this action on February 14, 2019. (Compl.). Becker was served with a summons and a copy of the Complaint on March 4, 2019. (Summons Returned Executed as to Def. Becker, Dkt. No. 17). Becker failed to appear, answer, or otherwise respond to the Complaint. Serini sought a certificate of default against Becker, and the Clerk of Court entered default against her. (Clerk's Entry of Default). Following a settlement conference with the Court, Serini reached a settlement with all Defendants except Becker. (Stip. & Order of Partial Dismissal).

Before the Court now is Serini's third motion for default judgment. (Mot. for Default J.).[1] She moves for default on her malicious prosecution claim and seeks

---

[1] The Court ordered Serini to file a renewed motion because the first motion had been denied without prejudice to renewal, and because the Court could not ascertain damages. (Order dated Apr. 4, 2023). Serini renewed her motion for default judgment against Becker, but the Court recommended denying that motion because Serini again did not allege damages. (R. & R. dated Dec. 6, 2023, Dkt. No. 104). Judge Gershon

$500,000 in damages for financial loss and emotional distress.[2]  (Decl. of Scott Epstein in Supp. of Mot. for Default J. ("Epstein Decl."), Dkt. No. 107-1).

DISCUSSION

I.   Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).  The Clerk of Court entered a default against Becker on May 8, 2019.  (Clerk's Entry of Default).

The next question, before reaching liability or damages, is whether Defendants' conduct is sufficient to warrant entry of a default judgment.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These

---

adopted the Report and Recommendation in full on January 25, 2024.  (Order Adopting R. & R., Dkt. No. 106).

[2] Serini does not seek default on her false arrest claim, and therefore, this claim should be dismissed.  *See Root Bros. Farms v. Big Big Produce, Inc.*, No. 21-CV-1962, 2022 WL 4586185, at *8 (E.D.N.Y. Aug. 2, 2022), *report and recommendation adopted*, 2022 WL 4586350, at *1 (Sept. 29, 2022).

4

factors are "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

      First, Becker's failure to respond to the Complaint demonstrates that her default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff default judgment against them). She was properly served with the summons and Complaint. (Summons Returned Executed as to Jennifer Becker, Dkt. No. 17). The motion for default judgment and supporting papers were also served via mail to Becker's last known address. (Certificate of Service dated Feb. 23, 2024, Dkt. No. 107-3). Notwithstanding this notice and service, Defendant Becker did not respond to the Complaint, did not appear, and has not in any way attempted to defend herself. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

      Second, the Court cannot conclude there is any meritorious defense to Serini's allegations because Becker did not appear, and no defense has been presented to the

5

Court.  *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

Third, Serini would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Order (Jan. 26, 2009); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors weigh in favor of the entry of default judgment.  The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.  Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [her] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).  "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment." *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)). "[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (first citing Fed. R. Civ. P. 8(b)(6); and then citing *Romanowicz*, 577 F.3d at 83 n.6).

As discussed below, the Court respectfully recommends that Becker be found liable for malicious prosecution.[3]

A. Malicious Prosecution

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's

---

[3] Serini brought a parallel malicious prosecution claim under § 1983, asserting Fourth and Fourteenth Amendment violations. (Compl. ¶ 1). Because the Court finds that Serini succeeds on the state law claim, the Court does not reach the § 1983 claim, because the damages overlap entirely (indeed, counsel does not present any additional damages available if liability is imposed).

actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quotations omitted). The Court finds that Serini has adequately alleged, and the Court accepts as true on default, facts to establish each element of a New York malicious prosecution claim.

*First*, Serini has alleged that Becker initiated a criminal proceeding against her.[4] To satisfy this first element, Serini must show that Becker "play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* at 163 (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000)). "[A] civilian complainant can be held liable for malicious prosecution if she 'intentionally provided false evidence to the police resulting in the plaintiff's arrest and prosecution.'" *Weiner*, 90 F. Supp. 3d at 46 (quoting *Brown v. Nassau County*, 306 A.D.2d 303, 303 (2d Dep't 2003)).

Here, there is sufficient evidence to infer that Becker played an active role in each of Serini's three arrests. Serini alleges that each arrest was caused by false information that Becker gave to the police. (Compl. ¶¶ 26, 28, 31–32). The NYPD and the district attorney determined that the evidence that was the basis for Serini's third arrest—the

---

[4] Though Becker was employed by the NYPD, it was as a school crossing guard, not a police officer. (Compl. ¶ 2). Because she was not the arresting officer or involved in the investigation, she is more akin to a complaining witness than an officer defendant. *See Shabazz v. Kailer*, 201 F. Supp. 3d 386, 392–93 (S.D.N.Y. 2016) (finding that defendant officer's "role in the criminal proceeding [was] more akin to a traditional complaining witness" where he "signed a false affidavit and falsified photographic evidence, which were forwarded to the prosecution"). *Compare Weiner v. McKeefery*, 90 F. Supp. 3d 17, 45 (E.D.N.Y. 2015) (Bianco, J.) ("New York State Courts have opined that in order for a civilian complainant to be considered to have initiated a criminal proceeding, it must be shown that the complainant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." (alterations and quotations omitted), *with Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can initiate prosecution by filing charges or other accusatory instruments." (quotations omitted)).

8

sending of "vile and racist letters," (*id.* ¶ 31)—was fabricated by Becker. (*Id.* ¶ 35). The investigation showed that Becker herself had written and sent the letters. (*Id.*). And Becker was arrested, charged, and pled guilty to felony evidence tampering, and because of the investigation, all charges against Serini were dismissed. (*Id.* ¶¶ 36–37).

*Second*, Serini has shown that the proceedings were terminated in her favor. Under New York law, "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Cantalino v. Danner*, 96 N.Y.2d 391, 395 (2001).[5] "[W]hen charges are dismissed because they were groundless[,] not out of mercy or compassion, the favorable termination element is satisfied." *See D'Olimpio v. Crisafi*, 718 F. Supp. 2d 357, 368–369 (S.D.N.Y. 2010) (quoting *Cantalino*, 96 N.Y.2d at 397).

"On November 16, 2017, all charges against [Serini] were dismissed on motion of the Richmond County District Attorney." (Compl. ¶ 37). That dismissal was a favorable termination, and one not inconsistent with her innocence; indeed, the prosecution stated on the record that it moved to dismiss the charges against her because they had "determined that the accusator in th[e] case, Jennifer Becker, wrote multiple letters

---

[5] In *Lynch v. Suffolk County Police Department, Inc.*, 348 Fed. App'x 672, 674 (2d Cir. 2009), the Second Circuit held, in a summary order, that a dismissal in the interest of justice constituted an unfavorable termination. As other district courts have noted, "*Lynch* was a non-binding summary order issued after *Cantalino* was decided, yet *Lynch* does not cite *Cantalino*, and instead cites to precedent that pre-dates that decision." *Genovese v. County of Suffolk*, 128 F. Supp. 3d 661, 672 n.3 (E.D.N.Y. 2015). Accordingly, *Lynch* appears to no longer be good law. *See Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 160–61 (E.D.N.Y. 2014) (collecting cases); *see also Guzman v. United States*, No. 11-CV-5834, 2013 WL 543343, at *8 (S.D.N.Y. Feb. 14, 2013) (collecting cases), *modified on other grounds*, 2013 WL 5018553, at *6 (Sept. 13, 2013).

9

posing as [Serini] in an effort to frame [Serini] for hate crimes." (State Criminal Ct. Proceeding Tr. dated Nov. 16, 2017, attached to Pl.'s Letter Resp., Dkt. No. 108-1 at 2:15–18; Certificates of Disposition dated Nov. 16, 2017, attached to Pl.'s Letter Resp., Dkt. No. 108-3); *e.g.*, *D'Olimpio*, 718 F. Supp. 2d at 368–69 ("Here, there are no facts in the record indicating that the termination of the criminal charges was inconsistent with D'Olimpio's innocence; rather, D'Olimpio has testified that several of the documents underlying the initiation of his prosecution were forged and/or false.").

*Third*, Serini has shown a lack of probable cause. "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). While a grand jury indictment creates a presumption of probable cause, "[t]he presumption is rebuttable, and may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith.'" *Id.* (quoting *Colon*, 60 N.Y.2d at 82–83). Here, Serini alleges that Becker lied to the police and falsified evidence, which led to her arrest. Serini established—because the district attorney's office and the NYPD independently concluded—that Becker falsified evidence in order to have Serini arrested the third time. (Compl. ¶ 35). Serini has also alleged that Becker's false allegations and evidence led to the first two arrests. (*Id.* ¶¶ 5, 35). This is enough to show a lack of probable cause for malicious prosecution. *See, e.g.*, *TADCO Constr. Corp. v. Dormitory Auth. of State of N.Y.*, 700 F. Supp. 2d 253, 270–71 (E.D.N.Y. 2010) (finding a lack of probable cause where plaintiff alleged that defendant falsely told police that plaintiff was trespassing, which led to his arrest); *Shabazz*, 201

10

F. Supp. 3d at 392–93 (finding plaintiffs' allegation that the indictment was procured by fabricated evidence sufficient to overcome the presumption of probable cause).

*Fourth*, Serini has shown Becker acted with actual malice. "[A] lack of probable cause generally creates an inference of malice." *Manganiello*, 612 F.3d at 163 (quotations omitted). "[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff." *Id.* (quotations omitted). Because the Court has determined there was a lack of probable cause and Serini has alleged that all of her arrests were the result of Becker's false allegations and fabricated evidence, Serini has established that Becker acted with actual malice. *Cameron*, 598 F.3d at 69 ("[I]t is long-settled that the lack of probable cause may give rise to an inference of malice." (quotations omitted)); *see, e.g.*, *TADCO Constr. Corp.*, 700 F. Supp. 2d at 271 (finding actual malice where plaintiff alleged defendant maliciously commenced the proceeding against him as a means of retaliation); *Bailey v. City of New York*, 79 F. Supp. 3d 424, 451 (E.D.N.Y. 2015) (Weinstein, J.) ("Falsifying evidence is sufficient to show malice.").

Accordingly, Serini has established Becker's liability on the state law malicious prosecution claim.

III. <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quotations and citations omitted), *report*

11

*and recommendation adopted*, 2012 WL 1354481, at \*2 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at \*2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

"[U]nder New York State law, a plaintiff alleging malicious prosecution can be compensated for injuries beginning at the time of arrest and imprisonment, provided they are the direct, natural and proximate result of the prosecution[.]" *Johnson v. City of New York*, No. 15-CV-5873, 2019 WL 4279572, at \*5 n.5 (E.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, 2019 WL 4279030, at \*1 (Sept. 10, 2019). Those may include economic losses, *see Manganiello*, 612 F.3d at 168, and emotional distress damages, *see Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 205 (2d Cir. 2014), among others.

Serini seeks damages for emotional distress and lost profits, "no less than $500,000." (Epstein Decl. ¶¶ 22–28). The Court recommends awarding $258,401.99 for economic losses and emotional distress damages.

A. Lost Profits

In terms of economic damages, Serini is entitled to lost earnings (both past and future) that are a direct result of her false and malicious prosecution. *See Manganiello*, 612 F.3d at 168. Under New York law, "a plaintiff is entitled to recover lost profits only

12

if [s]he can establish both the existence and amount of such damages with reasonable certainty." *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (citing *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986)). These damages "may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Kenford Co.*, 67 N.Y.2d at 261. Reasonable certainty does not require "mathematical precision"; "[i]t requires only that damages be capable of measurement based upon known reliable factors without undue speculation." *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 403 (1993). Because "[t]he courts have generally rejected the use of gross receipts or gross profits as a means of establishing the value of a loss or injury to business interests," the Court looks at lost profits, not lost revenue. *S.A.B. Enters., Inc. v. Village of Athens*, 164 A.D.2d 558, 565 (3d Dep't 1991) (collecting cases); *e.g.*, *24/7 Recs., Inc. v. Sony Music Ent., Inc.*, 566 F. Supp. 2d 305, 316 (S.D.N.Y. 2008) (rejecting lost profits damages where plaintiff "point[ed] to evidence of past revenue, but fail[ed] to take into account its operating costs").

Serini claims that the arrests and subsequent media attention led to economic loss and forced her to close her chiropractic business and move away. (Affirmation of Danielle Serini ("Serini Affirm."), attached as Ex. I to Epstein Decl., Dkt. No. 107-12 ¶¶ 2–3). She asks the Court to award her "missed revenue for the period of 2017 through 2023" and the net loss from 2017, for a total of $688,480.00. (*Id.* ¶ 7). The Court awards the loss of profits, not total revenue, using the average net profit of the prior three years.

From 2014 to 2016, Serini's chiropractic business had an average net profit of $38,122.33. (*See* Epstein Decl. ¶ 25; Serini Affirm. ¶ 4). In 2017, the year of the events

13

in question, her business had a net loss of $44,035.00. (Serini Affirm. ¶ 4). Because Serini provided three years of net profits, the Court finds it reasonably certain that for the next three years, her business would make the average net profits from the three years before. Accordingly, the Court recommends granting $158,401.99 in lost profits damages for the lost profits in 2017, 2018, and 2019, combined with the net loss from the year 2017 (($38,122.33 x 3) + $44,035.00). To provide lost profits damages further into the future would require the Court to make a "multitude of assumptions . . . [and] require speculation and conjecture." *Kenford Co.*, 67 N.Y.2d at 262; *cf. Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 238 F. Supp. 2d 604, 609–12 (S.D.N.Y. 2002) (limiting lost profits to one year, instead of five years, where plaintiff only provided evidence of lost revenue for three months), *aff'd*, 92 F. App'x 812, 815 (2d Cir. 2004). Serini provides no support for the future projection other than past revenue and assumes without support (expert or otherwise) that the business would have operated in 2020 and beyond (including through the COVID pandemic and attendant economic effects) exactly the same as had in the past and generated the same number of patients and revenue, while incurring the same costs. Post-2019 damages are too speculative to be awarded.

    B. <u>Emotional Distress Damages</u>

"Under New York law, 'damages for emotional distress are . . . recoverable under a cause of action for malicious prosecution.'" *Knox v. County of Putnam*, No. 10-CV-1671, 2014 WL 7330851, at *6 (S.D.N.Y. Dec. 23, 2014) (adopting report and recommendation) (alteration in original) (quoting *Avildsen v. Prystay*, 204 A.D.2d 154, 155 (1st Dep't 1994)). "New York courts typically differentiate between garden variety

14

emotional distress claims that do not require medical attention and more complex claims resulting in a psychiatric injury." *Id.* (quotations omitted).

Serini was diagnosed with depression, anxiety, and post-traumatic stress disorder, and her psychiatrist declared "with a reasonable degree of medical certainty, that [these diagnoses] are causally related to the incidents with NYPD and Jennifer Becker and the consequences thereof." (Affirmation of Dr. Sharon Hird ("Hird Affirm."), attached as Ex. K to Epstein Decl., Dkt. No. 107-14 ¶ 8).  Serini was arrested three times while at work in front of clients and her children, held in jail for a total of four nights, and the news heavily covered her arrests. (Compl. ¶¶ 27–33).  Prior to the incidents at issue in this action, Serini had never seen a mental health professional, had no history of psychiatric illness, no substance abuse disorders, and no family history of illness. (Hird Affirm. ¶ 9).  None of these facts or evidence is contested, and the Court finds that the conclusion that Serini suffered significant emotional injury because of Becker's actions is well-supported.[6]

In a similar case—where the plaintiff was arrested at work and escorted in handcuffs past coworkers and supervisors, and the prosecution led to the end of her romantic relationship, excessive drinking, and therapy and prescription medication to sleep—the Second Circuit found that, "[b]ased on [a] survey of damages awards for emotion distress and malicious prosecution, $100,000 appears to reflect the upper end of the range of awards in comparable cases [for past emotional distress damages]." *Stampf*, 761 F.3d at 207 (collecting cases).  There, the Court recognized that even

---

[6] Dr. Hird's affirmation only speaks to Serini's diagnoses and past emotional distress but does not address the future impacts of any emotional injuries. (*See generally* Hird. Affirm.).  As such, the Court only awards damages for the past injury.

15

though the plaintiff "may have suffered greater than garden variety emotional distress," *id.* (quotations omitted), the emotional distress damages should be reduced to $100,000 from the jury's award of $200,000. *Id.* at 207–08. Following the Second Circuit's guidance, the Court recommends granting $100,000 in emotional distress damages. *See, e.g.*, *Lovitch v. Lovitch*, No. 11-CV-2536, 2015 WL 1047807, at *12 (S.D.N.Y. Mar. 10, 2015) (following *Stampf* and granting $100,000 in emotional distress damages where plaintiff was charged with sexual abuse, attended approximately fifteen court proceedings over a two-year prosecution, and suffered severe emotional pain, stress, and humiliation).[7]

## CONCLUSION

The Court recommends that the motion for default judgment be granted and that Serini be awarded $258,401.99 in damages.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates

---

[7] In light of the adequate evidentiary basis for the damages sought, the Court declines to hold an inquest. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory."). And although Serini's counsel seeks a jury trial on damages, as the Court pointed out in a prior order, there is no right to a jury to determine damages on default in this case. (R. & R. dated Dec. 6, 2023, Dkt. No. 104 at 3–4).

16

as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

                                              SO ORDERED.

                                              _/s/Sanket J. Bulsara_   August 12, 2024
                                              SANKET J. BULSARA
                                              United States Magistrate Judge

Brooklyn, New York